IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY J. WALDRON,<br>      Plaintiff, | )<br>)<br>) |
| vs. | )  Civil Action No. 20-0136<br>) |
| JOHN WETZEL, Secretary of the PA Department of Corrections, in his official and individual capacity, and MELINDA ADAMS, superintendent of SCI Mercer, in her individual and official capacity,<br>      Defendants. | )  Magistrate Judge Dodge<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM OPINION

Plaintiff Timothy J. Waldron brings this civil rights action pursuant to 42 U.S.C. § 1983, raising claims under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. These claims arise out of his confinement for 185 days in the Restricted Housing Unit (RHU) at the State Correctional Institution at Mercer, Pennsylvania (SCI Mercer). Named as Defendants are John Wetzel, the Secretary of Pennsylvania Department of Corrections ("DOC") and SCI Mercer Superintendent Melinda Adams.

Currently pending before the Court is Defendants' motion to dismiss the Complaint, (ECF No. 10). For the reasons that follow, the motion will be granted in part and denied in part.

**I. Procedural History**

Plaintiff commenced this action by filing a Complaint in January 2020 (ECF No. 1). The Complaint alleges in Count I that Plaintiff's indefinite confinement in the RHU constituted cruel and unusual punishment in violation of the Eighth Amendment. In Count II, Plaintiff claims that his confinement without an explanation, a hearing or an opportunity for review, as well as Defendants' failure to transport him to preliminary hearings, violated his due process rights under the Fourth, Fifth and Fourteenth Amendments. In addition to monetary damages, he seeks

a declaratory judgment, attorneys' fees and other relief.

Defendants' motion to dismiss and supporting brief were filed on March 31, 2020 (ECF No. 10 and 11) and Plaintiff's brief in opposition was filed on May 1, 2020 (ECF No. 13). Therefore, this matter has been fully briefed.

**II.   Standard of Review**

The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. *Id.* at 679. The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of

the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### III. Factual Background

In 2002, Plaintiff was charged with DUI manslaughter in Florida and ultimately was sentenced to five years of imprisonment and ten years of probation. (Compl. ¶¶ 16-17.) Upon being released from prison on June 2, 2009, he relocated to Pennsylvania. His probation was also transferred to Pennsylvania. (*Id.* ¶¶ 18, 19, 22.) He completed a college degree and operated a successful business. He married and had a positive relationship with his adult son. (*Id.* ¶¶ 20-22.)

On November 7, 2018, Plaintiff was subject to a traffic stop and the officer who stopped him claimed to smell marijuana. Plaintiff explained that he had a medical prescription for marijuana, but he was nevertheless arrested for DUI. (Compl. ¶¶ 23-25.) On instructions from his parole officer, he was admitted to White Deer Treatment Facility for inpatient rehabilitation, and upon his discharge, he was taken into custody. (*Id.* ¶¶ 27-28.)

Because Plaintiff allegedly had violated his probation, the State of Florida placed a detainer on him. As a result of this detainer, he was transported to SCI Mercer on December 10, 2018. (Compl. ¶¶ 29-30.) Upon his arrival, he was placed in a Security Level 5 cell in the RHU, which is also referred to as "Administrative Custody," "solitary confinement" or "the hole." (*Id.* ¶ 31.) Plaintiff was never given a reason for being placed in the RHU, was never given a hearing and was not permitted to appeal this placement. He notes that according to the Inmate Handbook, inmates are supposed to receive a written explanation of the reason for administrative custody within 24 hours of such placement and have a hearing within seven days of such placement as well as a right to appeal. (*Id.* ¶¶ 32-38.)

Between December 10, 2018 and June 19, 2019, a series of five preliminary hearings regarding the pending DUI charge were scheduled and continued in Allegheny County. On at least three occasions, Plaintiff was transported from SCI Mercer to Allegheny County Jail without explanation. On these occasions, he stayed in Allegheny County Jail for several days before being transported back to SCI Mercer, again without explanation. (Compl. ¶¶ 39-41.)

Plaintiff's Florida probation was scheduled to end on June 2, 2019. (Compl. ¶ 42.) On June 19, 2019, he was finally afforded a preliminary arraignment before an Allegheny County magistrate via videolink from SCI Mercer. (*Id.* ¶ 43.) On June 21, 2019, he was transported to Allegheny County Jail, where he remained until his trial. At trial, he was found not guilty on all counts on December 19, 2019. Plaintiff was released from incarceration on January 10, 2020. (*Id.* ¶¶ 44-46.)

In total, Plaintiff was incarcerated in solitary confinement for approximately 185 days. While he was incarcerated in solitary confinement, correctional officers periodically ransacked his cell, often destroying his personal notes. (Compl. ¶¶ 47-48.)

Plaintiff asserts that as a result of his long incarceration, he lost his home remodeling business and his marriage ended in divorce. During his incarceration in solitary confinement, Plaintiff was isolated from any meaningful human contact. His isolation caused him to experience severe depression and anxiety, and multiple episodes of suicidal ideation. Plaintiff now experiences severe anxiety whenever he has to leave his home. He continues to suffer severe depression as a result of his incarceration, which has prevented him from returning to work or reestablish personal relationships, including with his son, that were lost in the course of his incarceration. (Compl. ¶¶ 49-57.)

**IV. Discussion**

Section 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). *See also Baker*, 443 U.S. at 140; *Graham v. Connor*, 490 U.S. 386, 394 (1989).

Plaintiff alleges violations of his Eighth Amendment right to be free from cruel and unusual punishment and of his due process rights under the Fourth, Fifth and Fourteenth Amendments. Each of these claims will be addressed below.

A. <u>Plaintiff's Eighth Amendment Claim (Count I)</u>

In Count I, Plaintiff alleges that Defendants' act of incarcerating him indefinitely in the RHU constituted cruel and unusual punishment in violation of the Eighth Amendment.[1] In their motion to dismiss, Defendants contend that his allegations do not rise to the level of an Eighth Amendment claim because he was not deprived of basic human needs such as food, clothing, shelter, sanitation, medical care or personal safety. Plaintiff notes in response that a "growing consensus" of legal and scientific authority recognizes the devastating physical and mental health

---

[1] Defendants argue that Plaintiff's confinement was not "indefinite" because his confinement would and did end after his trial. Plaintiff notes that his confinement in the RHU had no fixed endpoint, such as a 30-day transfer to the RHU for purposes of punishment.

consequences caused by long-term isolation in solitary confinement.

The Court of Appeals has held that "the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until 'after sentence and conviction.'" *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) ("*Hubbard I*") (footnote omitted) (quoting *Graham*, 490 U.S. at 392 n.6)). *See also Murray v. Keen*, 763 F. App'x 253, 255 (3d Cir. Feb. 20, 2019) ("sentenced prisoners are protected only from punishment that is 'cruel and unusual' while pretrial detainees are protected from any punishment" (citing *Hubbard I*, 399 F.3d at 166-67)). Therefore, while the parties have not addressed it, a threshold issue that must be addressed is Plaintiff's status while incarcerated.

The Court of Appeals has held that individuals remain pretrial detainees until such time as they are sentenced. *See Stevenson v. Carroll*, 495 F.3d 62, 67 (3d Cir. 2007). Although the Complaint does not explicitly reference Plaintiff's status, his brief in opposition to the motion to dismiss asserts that he was a pretrial detainee. See ECF No. 13 at 6, 7. According to the facts alleged in the Complaint, he had been arrested but not yet tried, convicted or sentenced (in fact, he was ultimately acquitted of the charge against him) when he was sent to SCI Mercer and then confined in the RHU. Thus, for purposes of this analysis, the Court concludes that at the time of the events at issue, Plaintiff was a pretrial detainee.[2]

Thus, because Plaintiff was a pretrial detainee, his claims must be made and addressed under the Fourteenth Amendment's due process clause, not the Eighth Amendment's cruel and unusual punishments clause. Therefore, Plaintiff has failed to state an Eighth Amendment claim and Count I will be dismissed.

---

[2] If either party disputes Plaintiff's status as a pretrial detainee, they may file a motion to reconsider this issue.

B. <u>Plaintiff's Due Process Claims (Count II)</u>

In Count II of the Complaint, Plaintiff alleges that he has been deprived of his due process rights under the Fourth, Fifth and Fourteenth Amendments.

**1. Fourth and Fifth Amendment Claims**

The Fourth Amendment prohibits unreasonable searches and seizures. With respect to his Fourth Amendment rights, Plaintiff argues that "his arrest and incarceration constituted an unreasonable seizure under the Fourth Amendment because the duration and character of the seizure – indefinite detention in solitary confinement for the better part of a year – were manifestly unreasonable the Fourth Amendment." (ECF No. 13 at 8.)

However, Plaintiff does not allege, nor could he, that Secretary Wetzel or Superintendent Adams had any involvement in his arrest or the decision to detain him in prison prior to trial, and he cites no authority that would support his claim that his detention in SCI Mercer constituted a "seizure" under the Fourth Amendment.[3] Moreover, while it is possible, as Defendants suggest, that Plaintiff's claim may be based upon the searches of his prison cell as referenced in his Complaint, the Supreme Court has held that "the Fourth Amendment has no applicability to a prison cell." *Hudson v. Palmer*, 536 U.S. 517, 536 (1984). *See also Crosby v. Piazza*, 465 F. App'x 168, 172 (3d Cir. Feb. 29, 2012).

For these reasons, Plaintiff has not stated a claim under the Fourth Amendment.

Plaintiff also alleges that Defendants violated his rights under the due process clause of the Fifth Amendment. While the Complaint does not specify the actions that form the basis for this claim, Defendants assert that the Fifth Amendment claim must be dismissed on the ground

---

[3] As explained below, his confinement in the RHU for 185 days without explanation or an opportunity for review states claims for both substantive and procedural due process violations under the Fourteenth Amendment.

7

that this provision applies only to the federal government, not to the acts of state government or state officials. *Bartkus v. Illinois*, 359 U.S. 121, 124 (1959); *Citizens for Health v. Leavitt*, 428 F.3d 167, 178 n.11 (3d Cir. 2005). The Court agrees. While Plaintiff cites *Curtis v. Wetzel*, 763 F. App'x 259, 265 (3d Cir. Feb. 13, 2019), which held that a prisoner could state a claim when he was transferred to the RHU as a consequence for failing to admit his offenses as a violation of his right against self-incrimination, it is inapplicable here. The claim in *Curtis* was brought under the Fifth Amendment's compulsion clause, not the due process clause.

Thus, Plaintiff's Fifth Amendment claim will be dismissed.

### 2. Fourteenth Amendment Claims

In Count II, Plaintiff also raises Fourteenth Amendment due process claims based upon being confined to the RHU for 185 days without the opportunity to review his confinement, Defendants' failure to transport him to preliminary hearings, and their failure to comply with internal prison policies. Defendants do not deny that the due process clause of the Fourteenth Amendment is generally applicable but contend that Plaintiff cannot state a claim based on the facts pleaded in this case.

*Substantive Due Process Claim*

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." "The substantive component of the Due Process Clause limits what government may do regardless of the fairness of the procedures that it employs." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000). This "guarantee[s] protect[ion] against government power arbitrarily and oppressively exercised." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

In *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979), the Supreme Court established the

principle that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." In determining what constitutes "punishment," the Court stated that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment." *Id.* at 539. In making the determination of whether a challenged condition of confinement amounts to a punishment of a pretrial detainee, "'[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008) ("*Hubbard II*") (quoting *Bell*, 441 U.S. at 538) "[C]onditions that are reasonably related to a penal institution's interest in maintaining jail security typically pass constitutional muster." *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (citing *Bell*, 441 U.S. at 540). In contrast, a "particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Id.* (internal quotations and citations omitted); *see also Hubbard II*, 538 F.3d at 232.

The Court of Appeals has noted that unconstitutional punishment typically involves both objective and subjective components. *Stevenson*, 495 F.3d at 68. The objective component requires an inquiry into whether the deprivation was sufficiently serious, and the subjective component asks whether the officials acted with a sufficiently culpable state of mind. *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). As the Third Circuit observed, the Supreme Court in *Bell* allowed for an inference of mens rea where the restriction was arbitrary or purposeless, or where the restriction was excessive, even if it would accomplish a legitimate governmental

9

objective.

Critically, the *Stevenson* court held that dismissal of the complaint by the District Court at the motion to dismiss stage was improper because it could not make the required objective or subjective inquiries. *Id.* Similarly, at this stage, this Court cannot make the objective and subjective inquiries necessary to determine whether Plaintiff's confinement in the RHU—for which he claims that he was given no reason—amounted to "punishment." *Cf. Steele v. Cicchi*, 855 F.3d 494, 505-06 (3d Cir. 2017) (record established that pretrial detainee was transferred to administrative segregation after prison received a credible claim that he was coercing other inmates to use a particular outside bail bonds service, therefore his substantive due process claim to be free from punishment was dismissed on summary judgment).[4]

As such, Plaintiff has stated a claim that his substantive due process right to be free from punishment was violated.

Plaintiff also alleges that Defendants violated his due process rights by not transporting him to his preliminary hearings. Defendants contend that he was transported from SCI Mercer to the Allegheny County Jail multiple times, but at any rate, the responsibility to transport incarcerated parties to court proceedings rests on counties and sheriffs, not on the Pennsylvania DOC. Moreover, they note that Plaintiff fails to plead that Defendants had adequate notice of his legal proceedings and refused to transport him or make him available for transportation.

On the current state of the record, the Court cannot conclude whether the failure to transport Plaintiff was solely the result of inadvertence, the fault of the transporting third parties,

---

[4] The case law on which Defendants rely involves convicted inmates, not pretrial detainees. They contend that confining Plaintiff to the RHU for only 185 days was not "atypical" to the ordinary incidents of prison life. However, as the court in *Stevenson* noted, this standard, which was announced in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), does not apply to pretrial detainees. 495 F.3d at 69 n.4.

or whether there is any factual basis for a claim that the Defendants had some role in a deliberate and wrongful effort to preclude or delay Plaintiff's transport. Therefore, Defendants' motion to dismiss this aspect of Plaintiff's due process claim will be denied and this issue can be revisited once the record is complete.

*Procedural Due Process Claim*

Plaintiff's RHU confinement also raises a procedural due process claim. The Supreme Court has held that "[t]he core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266 (1998).

In *Stevenson*, the Third Circuit held that "[a]lthough pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in the SHU without explanation or review of their confinement." 495 F.3d at 69. The quantity of process required for administrative transfers of pretrial detainees to the RHU need not be extensive: prison officials must provide "only an explanation of the reason for their transfer as well as an opportunity to respond." *Id.* at 70 (citing *Hewitt v. Helms*, 459 U.S. 460, 474 (1983)). Additional procedures are required when a prisoner is confined in the RHU for disciplinary reasons. *Id.*

In this case, Plaintiff has alleged that he was never provided *any* reason for being placed in the RHU and was never provided an opportunity to respond. As such, he has stated a claim for a violation of his right to procedural due process. *See Stevenson*, 495 F.3d at 71 (at the motion to dismiss stage, it was not possible to discern whether the relationship between the detention in the RHU and a legitimate governmental purpose is reasonable).

At the same time, Defendants argue that Plaintiff cannot base his claim on purported violations of Defendants' internal policies as set forth in the Inmate Handbook. The Court

agrees. As a number of courts have held, corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures. *See Steele*, 855 F.3d at 508 (no standalone protected liberty interest in prison manual procedures); *McCrudden v. United States*, 2016 WL 1259965, at *4 (D.N.J. Mar. 31, 2016) (no right to sue for prison's alleged violation of inmate handbook); *Lee v. Schrader*, 2014 WL 2112833, at *5 (W.D. Pa. May 20, 2014) (no claim based on failure to follow a DOC procedure); *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2008) ("a prison policy manual does not have the force of law and does not rise to the level of a regulation") (citation omitted); *Jae v. Stickman*, 2013 WL 4479009, at *3 (W.D. Pa. Aug. 19, 2013) (same).

Therefore, to the extent Plaintiff bases his due process claim on violations of the Inmate Handbook, Defendants' motion to dismiss will be granted.

In summary, with respect to Count II, the motion to dismiss will be granted with respect to Plaintiff's claims based upon violations of the Inmate Handbook and otherwise denied.

### 3. Injunctive and Declaratory Relief

Defendants argue that Plaintiff cannot obtain injunctive and declaratory relief because he is no longer incarcerated at SCI Mercer or in any DOC facility. Courts have held that a prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge. *See Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir. 1981). In addition, a prisoner's release or transfer from the prison that was the location of the alleged violations moots any claims for injunctive and declaratory relief. *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003).

While Plaintiff asserts that his claims are "capable of repetition yet evading review," the Court cannot enjoin activity that is not ongoing based on the possibility that it might recur at

some future time. "While there is a 'narrow exception' when a case presents a question capable of repetition yet evading review, Plaintiff does not meet this exception, as '[s]peculation that [Plaintiff] could return to prison does not overcome the mootness doctrine.'" *Mayon v. Wetzel*, 2017 WL 1211626, at *3 (W.D. Pa. Apr. 3, 2017) (citing *Cobb v. Yost*, 342 F. App'x 858, 859 (3d Cir. 2009)). *See also Abdul-Akbar v. Watson*, 4 F.3d 195, 207 (3d Cir. 1993) ("Such conjecture [that the plaintiff would return to prison] as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power.")

In support of his position, Plaintiff cites *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). In that case, however, the Supreme Court held that a defendant could not render a claim moot by ceasing its offending conduct after it was sued. Clearly, this is not what occurred in this case. Plaintiff had already been released from the RHU when the case was filed.[5] Therefore, with respect to Plaintiff's request for declaratory relief, the motion to dismiss will be granted.

### 4. Compensatory Damages

Plaintiff requests compensatory damages in his claims for relief. Defendants contend that under the Prison Litigation Reform Act (PLRA), he may not seek compensatory damages unless he has physical injuries.

Pursuant to the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a showing of physical injury." 42 U.S.C. § 1997e(e). See *Mitchell v. Horn*, 318

---

[5] Plaintiff contends that he was denied access to counsel and his mail, which precluded him from filing suit while in prison, at which time he could have obtained injunctive relief (ECF No. 13 at 4). Even accepting this argument as true, however, it does not affect the mootness of his requests for declaratory relief after his release. He also seems to suggest that other pretrial detainees could be subjected to the same policy. However, the "capable of repetition but evading review" exception to the mootness doctrine requires that "there is a reasonable likelihood that the *same* complaining party would be subjected to the same action again." *Abdul-Akbar*, 4 F.3d at 206 (emphasis added).

F.3d 523, 533 (3d Cir. 2003) (holding that the PLRA does not permit an inmate to recover Eighth Amendment compensatory damages for purely emotional trauma of fear of assault unaccompanied by any actual physical injury).

The definition of "prisoner" in the PLRA is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The Court of Appeals has observed that "every court of appeals to have considered the issue has held that the PLRA does not apply to actions filed by former prisoners." *Ahmed v. Dragovich*, 297 F.3d 201, 201 n.10 (3d Cir. 2002). *See Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000) (en banc) (personal injury requirement applies only if prisoner is incarcerated at the time the action is filed).[6]

Plaintiff asserts that he was released from custody on January 10, 2020 and this action was filed on January 29, 2020. Thus, he was not a "prisoner" when he filed the case and the restrictions of the PLRA—including the prohibition on recovery for mental or emotional injury suffered while in custody without a showing of physical injury—do not apply to him. Therefore, Defendants' motion to dismiss Plaintiff's claim for compensatory damages will be denied.

### 5. Involvement of Secretary Wetzel

In order to be held liable in a civil rights action, a defendant must have personal involvement in the alleged wrongdoing. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). "Personal involvement can be shown through allegations of personal

---

[6] The *Harris* court also held that a prisoner who is released and attempts to file an amended complaint would still be subject to the restrictions of the PLRA. The Court of Appeals for the Third Circuit disagreed, holding that if a prisoner is allowed to file an amended complaint after being released, the amended complaint is not subject to the restrictions of the PLRA. *See Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019).

direction or of actual knowledge and acquiescence." *Id. See also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Defendants move to dismiss all claims against Secretary Wetzel on the ground that Plaintiff has failed to allege his personal involvement in the events underlying the Complaint.

Plaintiff asserts two arguments in response. First, he contends that Secretary Wetzel's name and signature appear on the cover of the Inmate Handbook, indicating his involvement in writing the policies contained therein. As explained above, however, Plaintiff cannot state a claim based upon prison officials' failure to comply with provisions in the Inmate Handbook.

Plaintiff also argues that his "placement in solitary confinement was apparently pursuant to official Department of Corrections policy, which is overseen by Defendant Wetzel, and the failure to provide Plaintiff with any process to address his placement in solitary custody was part of a pattern of behavior on the part of the Department." (ECF No. 13 at 5.) That is, he is alleging that the prison had a "custom" of placing pretrial detainees who are accused of violating out-of-state probation in the RHU indefinitely and that Secretary Wetzel was aware of and condoned this custom. See Compl. at 7 (requesting a declaration that this policy violated Plaintiff's rights).

The Court of Appeals has held that "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted). In addition, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.*

"Policy is made when a decisionmaker possessing final authority to establish municipal

policy with respect to the action issues an official proclamation, policy, or edict." *Kniepp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996) (citation omitted). Customs are "practices of state officials ... so permanent and well settled as to virtually constitute law." *Id.* (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). In other words, a custom is "an act 'that has not been formally approved by an appropriate decisionmaker' but that is so widespread as to have the force of law." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997)).

Thus, even if an official written "policy" appears to prohibit certain behavior, if a plaintiff can demonstrate that the behavior was tolerated and condoned by policy-making officials, municipal liability can be established. *See Huffman v. City of Prairie Village*, Kan., 980 F. Supp. 1192, 1205 (D. Kan. 1997) (city had official policy prohibiting sexual harassment, but plaintiff presented evidence that such conduct was widespread in police department and that policy-making officials were aware of it).

Plaintiff has alleged that Secretary Wetzel, a policy-making official, was involved in the custom of placing certain pretrial detainees in the RHU. At this stage of the proceedings, these allegations are sufficient to state a claim.[7] Therefore, the motion to dismiss Secretary Wetzel will be denied.

V. **Conclusion**

In summary, Defendants' motion to dismiss the Complaint will be granted in part and

---

[7] It is not clear whether Secretary Wetzel had any involvement with the procedural due process aspect of Plaintiff's claim, that is, whether he directed SCI Mercer to confine Plaintiff to the RHU indefinitely without providing a reason, a review or an opportunity to appeal, or even knew that this was occurring. However, the parties have not addressed the issue and the Court cannot resolve it at this time.

denied in part. The motion will be granted with respect to claims under the Fourth, Fifth and Eighth Amendments, claims arising out of alleged violations of the Inmate Handbook, and the claims for injunctive or declaratory relief. Their motion will be denied with respect to Plaintiff's claims under the Fourteenth Amendment and dismissal of all claims against Secretary Wetzel.

An appropriate order will be entered.

Dated June 10, 2020

BY THE COURT:

PATRICIA L. DODGE
United States Magistrate Judge