**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

TIMOTHY JAY WALDRON,      )
                                     )
             Plaintiff,        )
                                       )       Civil Action No. 20-136
       v.                           )
                                       )
JOHN E. WETZEL, et al.,        )
                                       )
             Defendants.      )

## <u>MEMORANDUM ORDER</u>

Plaintiff Timothy J. Waldron ("Waldron") brings this civil rights action pursuant to 42 U.S.C. § 1983, raising constitutional claims arising out of his confinement for 185 days in the Limited Privilege Housing Unit ("LPHU") at the State Correctional Institution at Mercer, Pennsylvania ("SCI Mercer") on Administrative Custody status. Named as Defendants are John Wetzel, the former Secretary of Pennsylvania Department of Corrections and SCI Mercer Superintendent Melinda Adams.

Currently pending before the Court is a motion in limine filed by Defendants (ECF No. 49) which has been fully briefed (ECF Nos. 50, 51).

### I.   Relevant Background

Waldron's Complaint alleged that his indefinite confinement in restricted housing constituted cruel and unusual punishment in violation of the Eighth Amendment (Count I) and that his confinement without an explanation, a hearing or an opportunity for review, as well as Defendants' failure to transport him to preliminary hearings, violated his procedural and substantive due process rights under the Fourth, Fifth and Fourteenth Amendments (Count II). Some of these claims have been dismissed in connection with Defendants' dispositive motions.

Defendants contend that the only remaining claim in this case is Waldron's procedural due process claim under the Fourteenth Amendment. They assert that "Plaintiff has indicated that he is seeking to recover on what are essentially conditions of confinement claims, but there are no claims under the Eighth Amendment remaining at-issue for trial. As such all evidence regarding the conditions of Plaintiff's confinement is irrelevant." (ECF No. 50 at 1.)

Defendants are incorrect. On December 6, 2021, the Court issued a memorandum opinion (ECF No. 40) and order (ECF No. 41) that granted Defendants' motion for summary judgment in part and denied it in part. Their motion was granted with respect to Waldron's substantive due process claim arising out of the failure to transport him to preliminary hearings and with respect to his procedural due process claim against Secretary Wetzel. However, Defendants' motion was denied with respect to Waldron's remaining substantive and procedural due process claims.

Thus, Waldron's procedural due process claim against Superintendent Adams and the substantive due process claim against both defendants remain to be adjudicated. The substantive due process claim is based on the conditions of confinement to which Waldron claims to have been subjected while housed in the LPHU. This claim is analyzed under the Fourteenth Amendment rather than the Eighth Amendment because he was a pretrial detainee, rather than a convicted prisoner, but nonetheless relates to his conditions of confinement. *See Stevenson v. Carroll*, 495 F.3d 62, 67, 69 & n.4 (3d Cir. 2007) (applying Fourteenth Amendment analysis to inmates who had been convicted and sentenced to death but whose sentences had been vacated and were awaiting resentencing).

## II.   Defendants' Motion in Limine

At issue in Defendants' motion in limine are Waldron's damage claims. In his Pretrial Statement, Waldron identifies his damages as loss of earnings and "psychiatric damages." (ECF No. 47 at 2.) Defendants contend that he cannot recover lost wages because they had no role in the length of his incarceration or delays in his trial. They further argue that Waldron cannot recover compensatory damages because he sustained no physical injuries and cannot demonstrate that his conditions of confinement proximately caused the injuries that he claims to have suffered.

### A.   Claim of Lost Wages

In his Pretrial Statement, Waldron states that "the prolonged incarceration resulted in losing a lucrative position, earning up to $120,000 per year working in oil fields, as well as businesses installing home swimming pools and home remodeling." (ECF No. 47 at 2.) Defendants contend that because they were not responsible for Waldron's prolonged incarceration or issues related to delays in his transportation to various hearings in the Court of Common Pleas of Allegheny County, they cannot be liable for Waldron's lost wages claim.

Waldron previously testified that the restrictions on inmates housed as out of state parole violators made telephone communications with parties outside of the facility "extremely difficult." He asserts that these restrictions made it difficult or impossible for him to sustain his business as well as deal expeditiously with his legal entanglements. (ECF No. 51 at 2.)

It is uncontroverted that when Waldron was arrested, he was classified as an out of state probation violator and transported to SCI Mercer, where he was held pending trial. Moreover, as determined in connection with Defendants' dispositive motion, they did not control the length of his incarceration at SCI Mercer and had no role either in his transportation to Allegheny County Jail for

hearings prior to trial or the timing of his trial. While Waldron asserts that if he was not incarcerated, he could have worked in the oil fields or installed home swimming pools and performed home remodeling, he certainly could not have engaged in these businesses while incarcerated. Thus, any claim that Defendants prevented him from performing work in any of these endeavors is unavailing.

Moreover, Waldron has failed to identify any evidence that these Defendants were responsible for any economic losses he sustained. He does not identify any evidence that would support his assertion that he could have remotely sustained his business or dealt with his legal situation if he had been able to make more telephone calls. His response to the motion in limine does not indicate that he intends to offer evidence that he had employees or other personnel who could have continued to operate his businesses while he was incarcerated or that he was prevented from communicating with his counsel. Notably, his Pretrial Statement does not appear to identify any such witnesses. Moreover, Waldron does not suggest that Defendants *prevented* his ability to contact individuals outside the prison to facilitate efforts to keep his businesses running or to assist him with his legal issues, or that he lacked other means of communication, such as mail. Without evidence to support his claim that being housed in the LPHU affected his ability to earn wages, sustain a business or obtain legal assistance, his lost wages claim lacks foundation.

Even if such evidence was proffered, however, Waldron merely states in his Pretrial Statement that he sustained "up to" $120,000 in lost wages. He does not include the "method of calculation of all economic damages" as required by the Court's Local Rules. LCvR 16.1(C)(1)(b). Further, his Pretrial Statement does not identify any exhibits that might support a claim of economic damages. In short, his mere assertion that he sustained an economic loss "up to" $120,000 is entirely speculative and therefore inadmissible. *See Spang & Co. v. U.S. Steel Corp.*, 545 A.2d 861, 866 (Pa.

1988) ("As a general rule, damages are not recoverable if they are too speculative, vague or contingent and are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty.") (citing Restatement (Second) of Contracts, § 352; Murray on Contracts, § 226.); *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225-26 (3d Cir. 2003) ("To prove damages, a plaintiff must give a factfinder evidence from which damages may be calculated to a 'reasonable certainty.'")

Therefore, as to the lost wages claim, Defendants' motion in limine will be granted.

B. Claim of Compensatory Damages for Emotional Harm

Defendants assert that Waldron cannot recover compensatory damages at trial, and therefore, evidence related to his "psychiatric damages" is inadmissible.

A plaintiff in a civil rights case whose rights were violated is entitled to recognition of that violation even if no actual injury occurred. *Allah v. Al-Hafeez,* 226 F.3d 247, 252 (3d Cir. 2000). Defendants argue, among other things that, because Waldron has failed to show that he sustained physical injuries stemming from the alleged violations of his rights, he can recover only nominal damages even if he prevails at trial.

Defendants focus their arguments on Waldron's procedural due process claim, noting that they had no role in his initial incarceration or the length of time that he remained incarcerated. Defendants cite to Waldron's admission that a review of his placement in the LPHU would not have yielded a different result. As such, it was not the lack of procedural due process that caused the deprivation. *See McClary v. Coughlin*, 87 F. Supp. 2d 205 (W.D.N.Y. 2000), *aff'd sub nom. McClary v. Kelly*, 237 F.3d 185 (2d Cir. 2001) (if inmate's confinement in administrative custody was justified despite a denial of procedural due process, the jury may not award damages resulting

5

from the liberty deprivation). Thus, Defendants contend, there can be "no relief with respect to compensatory damages for injuries occasioned by the alleged deprivations … unless it is determined that, with such an opportunity, the result would have been different." *Fraternal Ord. of Police Lodge No. 5 v. Tucker*, 868 F.2d 74, 81 (3d Cir. 1989) (footnote and citations omitted). Since Waldron admits that no amount of review would have yielded a different result in his housing status, Defendants argue that he cannot recover any compensatory damages for his procedural due process claim.

Waldron responds, and the Court agrees, that this argument "misstates both Plaintiff's claims and Plaintiff's position." The fact that no form of process existed that might have yielded a different result is, in fact, the basis of Waldron's procedural due process claim. Simply put, Defendants cannot rely on the fact that they provided no process to justify denying relief on the ground that the result would have been the same. Whether Waldron would have remained in the LPHU even if some review process occurred is ultimately a question for the jury.

At any rate, as discussed previously, Waldron also contends that the conditions of his confinement in the LPHU violated his substantive due process rights. He contends that he "was subjected to [a] shocking and arbitrary exercise of governmental power in that he was cut off from all meaningful human contact for a prolonged period of time without any compelling purpose or justification." (ECF No. 51 at 4.)  While Defendants claim that "Plaintiff was *not* housed in solitary confinement conditions" (ECF No. 50 at 5), the record is disputed on this issue. Waldron testified that he was in solitary confinement for most of his incarceration at SCI Mercer and that the conditions to which he was subjected in the LPHU were "functionally indistinguishable" from those in the Restricted Housing Unit (RHU). (ECF No. 40 at 13.) This disputed fact must be resolved by

the jury at trial.

Waldron seeks compensatory damages for the emotional harm he sustained as a result of Defendants' actions. The Third Circuit has held that "expert medical evidence is not required to prove emotional distress in section 1983 cases." *Bolden v. Southeastern Pa. Transp. Auth.*, 21 F.3d 29, 36 (3d Cir. 1994). Thus, the fact that Waldron has not produced an expert report to support his claim of psychiatric damages does not preclude him from seeking actual compensatory damages related to emotional distress. Whether he can present sufficient admissible evidence at trial to do so is yet to be determined.

Defendants claim that prisoners cannot recover compensatory damages for emotional distress without physical injury because such damages are barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e) (PLRA). *See Allah v. Al-Hafeez*, 226 F.3d 247 (3d Cir. 2000); *Hubert v. Wetzel*, 2018 WL 4828470, at *6 (W.D. Pa. Oct. 4, 2018). However, as the Court stated in denying Defendants' motion to dismiss regarding this issue, the PLRA does not apply to actions filed by a former prisoner. *Ahmed v. Dragovich*, 297 F.3d 201, 201 n.10 (3d Cir. 2002). Because Waldron was not a prisoner when he commenced this action, "the restrictions of the PLRA—including the prohibition on recovery for mental or emotional injury suffered while in custody without a showing of physical injury—do not apply to him." (ECF No. 14 at 14.) That is the law of the case.

Thus, Waldron is not barred from presenting admissible evidence to the jury as to his alleged emotional damages.

Therefore, this 18th day of April 2022, Defendants' Motion in Limine to Preclude Evidence of Compensatory Damages is GRANTED in part. Plaintiff is precluded from presenting any evidence at trial regarding a claim for lost wages or other economic damages. Defendants' motion is DENIED with respect to admissible evidence of compensatory damages for emotional distress.

BY THE COURT:

s/ Patricia L Dodge
PATRICIA L. DODGE
United States Magistrate Judge

8